```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF GEORGIA
                     COLUMBUS DIVISION
```

WILLIE LEE WALLACE,            *

    Plaintiff,              *

vs.                            *

WILEY SANDERS TRUCK LINES, INC. *    CASE NO. 4:14-CV-142 (CDL)
and NEW HAMPSHIRE INSURANCE
COMPANY,                       *

    Defendants.             *

<u>O R D E R</u>

Defendants lost at trial, and they now want another one. They, of course, cannot contemplate the possibility that their defeat was due to the facts and the law not being on their side or, heaven forbid, that the trial advocacy of their opponents on this particular occasion was more effective than their own. Instead, they reflexively blame the jury and the judge. They boldly proclaim: "[t]he Court should grant a new trial given the many serious errors that pervaded this proceeding and prevented the jury from assessing the relevant facts and understanding the legal questions presented." Defs.' Mot. for New Trial Or Alternatively Remittitur and Mem. of Law in Supp. Thereof 1, ECF No. 82. Because no reversible error was committed and the evidence clearly supports the jury verdict, Defendants' motion is denied.

FACTUAL BACKGROUND

Plaintiff Willie Lee Wallace presented evidence at trial that he was operating his tractor-trailer vehicle in a lawful manner near a private driveway on U.S. Highway 82 East in Cuthbert, Georgia.  Defendant Wiley Sanders Truck Lines, Inc.'s employee was following Plaintiff's vehicle in a tractor trailer owned by Wiley Sanders that was insured by New Hampshire Insurance Co., which is a party to this action pursuant to Georgia's direct action statute, O.C.G.A. § 40-1-112(c).  Well in advance of the private driveway, Plaintiff turned on his turn signal indicating his intention to make a right hand turn. Plaintiff swung wide to make his right hand turn, and as he made the turn, Wiley Sanders's driver collided with the passenger side of Plaintiff's vehicle.  Plaintiff suffered injuries in the wreck and was initially taken to the hospital.  He was later treated for a torn rotator cuff injury and eventually had shoulder surgery, which required substantial post-surgery physical therapy.  Plaintiff introduced evidence of special damages exceeding $100,000 and testified about his past and present pain and suffering.  The jury found that Wiley Sanders's driver was negligent, and the jury awarded Plaintiff compensatory damages in the amount of $650,000.

DISCUSSION

Defendants enumerate the following errors in support of their motion for a new trial. First, Defendants contend that the Court erred in granting Plaintiff's motion in limine to exclude statements that Wiley Sanders's driver made at the scene of the wreck. Second, Defendants assert that the Court's verdict form was unfairly confusing and prejudicial to them. Third, Defendants argue that the Court incorrectly instructed the jury regarding New Hampshire Insurance Company's presence as a party. And fourth, Defendants contend that the Court erred because it did not *sua sponte* interrupt Plaintiff's counsel's closing argument when counsel allegedly made improper, but un-objected to, arguments to the jury regarding damages. In addition to these alleged errors, Defendants seek a new trial because they contend that the verdict was excessive. The Court addresses each of Defendants' arguments in turn.

I. **Hearsay Statements by Wiley Sanders's Deceased Driver**

Wiley Sanders's driver died prior to trial and before his deposition could be taken. Therefore, Defendants had no sworn testimony from their driver to present his explanation of what happened. In an attempt to overcome this dilemma, Defendants argued that the statements he made at the scene of the wreck on the investigating officer's dash cam should be heard by the jury. Plaintiff objected to those statements as inadmissible

3

hearsay and filed a motion in limine prior to trial. Defendants responded that the statements should be admitted under the following hearsay exceptions: present sense impression, excited utterance, and the residual exception. *See* Fed. R. Evid. 803(1) & (2), 807. The Court granted Plaintiff's motion, and the statements were excluded at trial. *See* Pretrial Order ¶ 24, ECF No. 66.

As the Court explained when it granted Plaintiff's motion in limine, the statements are neither present sense impressions nor excited utterances. A present sense impression is a statement describing or explaining an event or condition made while or immediately after the declarant perceived it. The driver's statements to the investigating officer fifteen to twenty minutes after the wreck were not made contemporaneously with the event; therefore, they are not present sense impressions. An excited utterance is a statement relating to a startling event or condition made while the declarant was under the stress of excitement that it caused. There is no indication that Defendants' driver was still under the stress or excitement of the event when he described to the investigating officer what happened. The statements therefore do not qualify as excited utterances such that they would be admissible notwithstanding that they are clearly hearsay statements. Finally, in the Court's best judgment, the statements were properly found not to

fall within the residual exception. There is no indication that these statements have "equivalent circumstantial guarantees of trustworthiness." Fed. R. Evid. 807(a)(1). A driver's explanation of why a wreck is not his fault does not fall within the type of statement that the residual exception to the hearsay rule is designed to admit. Accordingly, the Court again finds that the statements made by the driver on the dash cam footage are inadmissible hearsay. It was not error to exclude them.

The Court sympathizes with Defendants' predicament. They had to defend a claim of negligence without the opportunity to present an explanation from their allegedly negligent driver. But had the Court admitted the dash cam footage, Plaintiff would have been placed in the predicament of having to address the driver's explanation without having the opportunity to question or cross examine him about the statement and the operation of his vehicle on the day of the wreck. Either way, the driver's premature demise likely would prejudice one of the parties in this action. But prejudice is not the determinative standard for whether these statements should be admitted. They are clearly hearsay with no exception under the circumstances presented here. Accordingly, they had to be excluded.

5

**II.   The Jury Verdict Form**

The Jury returned the following verdict:

\_\_\_\_We, the jury, find in favor of the Defendants.

OR

<u>X  </u>We, the jury, find in favor of the Plaintiff and against the Defendants and find that the negligence of Gary Robinson caused compensatory damages to the Plaintiff in the total amount of: <u>$650,000.</u>

Do you also find that the Plaintiff was contributorily negligent in causing his damages?

<u>     </u>YES

<u> X </u> NO

If your answer to the preceding question was "Yes," what percentage do you attribute to the Plaintiff?<u>           </u>;

Based on this verdict, judgment was entered in favor of Plaintiff and against Defendants in the amount of $650,000.

Defendants complain about the order of the questions on the special verdict form.  They contend that the question regarding contributory negligence should have preceded the compound question that included negligence, causation, and damages.  The Court disagrees.  The jury clearly found that Defendants' driver was negligent and that his negligence caused compensatory damages to Plaintiff in the amount of $650,000.  The jury also clearly found that Plaintiff was not contributorily negligent at all.  Thus, it is clear that Plaintiff is entitled to recover $650,000 from Defendants based on that jury verdict.

6

It is also clear that the jury was properly instructed on the consequence of its special verdict findings. The Court thoroughly explained the Defendants' defense of contributory and comparative negligence and how it should be considered by the jury. Trial Tr. vol. III 71:25-72:4, 73:21-76:2 (Sept. 16, 2015), ECF No. 86. Then the Court explained the verdict form:

> The first -- you've got two options, basically. First, "We, the jury, find in favor of the defendants." If under my instructions on the law and based upon your decision you determine that the defendant should prevail, then the foreperson would check that box, sign the verdict form and date it indicating that all 12 jurors have agreed to that verdict.
>
> If you do not decide in favor of the defendants, the next option is, "We, the jury, find in favor of the plaintiff and against the defendants and find that the negligence of Gary Robinson caused compensatory damages to the plaintiff in the total amount of." And you would insert on that line the total amount of damages that you find were caused by the negligence of Gary Robinson.
>
> Then you have another question to answer if you do find damages in that blank. The next question you're asked has to do with the defendants' contributory negligence defense that I've given you all these instructions on. "Do you find that the plaintiff was contributorily negligent in causing his damages? Do you find that the defendant has proved by a preponderance of the evidence that the plaintiff was contributorily negligent?" If you answer that question "no" -- in other words, you find that he was not contributorily negligent -- you would check that box "no." The foreperson would sign the verdict form on behalf of the jury and date it, and the plaintiff would receive a judgment for the amount of damages that you placed in that line preceding that question.
>
> Now, if you find that the plaintiff was contributorily negligent, that the defendant has carried its burden

7

> of proving the plaintiff contributorily negligent, you would put an X next to "yes" that you have found that. If you then answer "yes," then you would put on the next blank the percentage of the plaintiff's contributory negligence.

*Id.* at 81:22-83:3.  The Court then explained the consequences of finding contributory negligence:

> Now, if you put in that blank 50 percent or more, then it doesn't matter what you put in this line about damages, because the plaintiffs will recover nothing. If you put in that blank something less than 50 percent, then I will later reduce the amount of damages that you put in this blank by the percentage that you put in this blank. I'll do that.

*Id.* at 83:4-9.

The Court's instruction as a whole, including its explanation of the verdict form, was consistent with the law and adjusted to the facts of the case.  The members of the jury were clearly instructed on how to complete the verdict form and the consequences of their answers.  They knew what to do if they found that Plaintiff was contributorily negligent.  Significantly, they did not find Plaintiff negligent at all.  There is no reversible error regarding the verdict form.

### III. New Hampshire Insurance Company as a Party

Defendants do not contend that New Hampshire Insurance Company should not have been a named party in this action.  New Hampshire Insurance Company was properly joined as a Defendant pursuant to Georgia's direct action statute, O.C.G.A. § 40-1-112(c).  Defendants complain about the Court's explanation to

the jury of why the insurance company was a Defendant in the case. The Court explained to the jury:

> The plaintiff, Mr. Wallace, seeks money damages to compensate him for the injuries caused by the wreck. Plaintiff has not sued Mr. Robinson individually, but he has sued Mr. Robinson's employer, Wiley Sanders Truck Lines, Inc. And the parties have stipulated and agreed that Wiley Sanders Truck Lines, Inc., is legally responsible for the acts of Mr. Robinson on the day of the wreck. *New Hampshire Insurance Company, the other defendant in this case, is the insurance company for Wiley Sanders Truck Lines, Inc. And although New Hampshire Insurance Company's presence should not affect the nature or amount of your verdict, the company will be jointly responsible with Wiley Sanders Truck Lines, Inc., for any verdict in this case.*

Trial Tr. vol. III 64:19-65:6 (emphasis added). This instruction is an accurate description of New Hampshire Insurance Company's status as a party under Georgia's direct action statute. *See Andrews v. Yellow Freight Sys., Inc.*, 262 Ga. 476, 476, 421 S.E.2d 712, 713 (1992) (finding that trial court erred in dismissing the insurance company from the action and remanding the case so the trial court could add the insurance company "as a named defendant required to share liability for payment of the judgment previously rendered").

This explanation accurately informed the jury of why New Hampshire Insurance Company was a party in the case. And it certainly did not unduly prejudice either Defendant. There is no contention that the jury should not have known that the insurance company was a party, and it would appear that if there

9

were any prejudice, it would be the jury simply knowing that an insurance company is a party. But Georgia law permits an insurance company to be joined as a party, and it was not error to explain the insurance company's status to the jury.

### IV. Plaintiff's Counsel's Closing Argument

Defendants argue that Plaintiff's counsel made several improper arguments to the jury during his closing argument, although Defendants did not object when the arguments were made. Defendants had a duty to alert the Court when the alleged improper argument was made so that the Court could intervene at that time if necessary. But the Court does understand that under certain exceptional circumstances failure to object to a closing argument does not amount to a waiver of the objection later. *See McWhorter v. City of Birmingham*, 906 F.2d 674, 677 (11th Cir. 1990) (per curiam) (noting that "[a] contemporaneous objection to improper argument is certainly the preferable method of alerting the trial court to the error and preserving such errors for review" but that "improper argument may be the basis for a new trial even if no objection has been raised" if "the interest of substantial justice is at stake"). Therefore, the Court has reviewed the transcript of the closing argument to ascertain whether Plaintiff's counsel committed misconduct that gravely impaired "the calm and dispassionate consideration of the case by the jury," thus warranting the serious consequence

10

of awarding a new trial. *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1474 (11th Cir. 1992) (quoting *Allstate Ins. Co. v. James*, 845 F.2d 315, 318 (11th Cir. 1988)) (noting that new trial may be warranted "based on grossly improper and inflammatory references made by plaintiff's counsel that were" not justified by the record or if the closing argument focuses on evidence or a legal theory that had been excluded by the trial judge). Having reviewed the argument, the Court finds no error warranting a new trial.

**V.   Amount of the Verdict**

Defendants claim that the verdict was excessive and that they should get another crack at another jury with a new trial. Apparently, Defendants believe that any verdict exceeding what they were willing to pay voluntarily is excessive. But that is obviously not the standard by which motions for new trial are decided. To overturn a jury verdict because it is excessive, the verdict amount must be "so excessive as to shock the conscience of the court." *Christopher v. Florida*, 449 F.3d 1360, 1368 (11th Cir. 2006) (quoting *Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1310 (11th Cir. 1990)). The verdict here does not meet this standard for excessiveness.

Plaintiff suffered a serious shoulder injury that required surgery and substantial physical therapy. As Defendants acknowledge, Plaintiff presented evidence that his special

11

damages exceeded $100,000.  And Plaintiff testified that he continued to experience pain long after the wreck occurred, indicating that he may have future pain and suffering for the rest of his life.  The Court properly instructed the jury on the elements of compensatory damages and what the jury could and could not consider.  The evidence supports a finding of compensatory damages of $650,000.  Such a verdict is certainly not so excessive that it warrants the drastic remedy of a new trial or remittitur.

## CONCLUSION

Defendants' Motion for New Trial Or Alternatively Remittitur (ECF No. 82) is denied.

IT IS SO ORDERED, this 25th day of January, 2016.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA